KEN-MAR FINANCE, PLAINTIFF v. LYNETTE McKENZIE HARVEY, DEFENDANT

No. 888DC24

(Filed 31 May 1988)

1. **Consumer Credit § 1; Unfair Competition § 1 — security interest taken in debtor's household furnishings — practice not unfair or deceptive**

    Plaintiff's action in taking a nonpossessory, nonpurchase money security interest in defendant's household goods and furnishings was neither unfair nor deceptive, since federal regulations specifically stating that such action is an unfair and deceptive trade practice were not in effect when the original loan agreement was executed, and N.C.G.S. § 53-180(f), in existence at the time of the loan, provided that real property was the only type of property which could not be used to secure a loan under N.C.G.S. § 53-173.

2. **Consumer Credit § 1; Homestead and Personal Property Exemptions § 6 — security agreement taking interest in debtor's household furnishings — practice not deceptive — debtor entitled to personal property exemption**

    A security agreement taking an interest in defendant's household goods and furnishings was not deceptive in light of N.C.G.S. § 1C-1601(c) which en-

Ken-Mar Finance v. Harvey

titles a debtor to retain free from judgment $2,500 worth of household goods and furnishings, since the exemption is available at the election of the debtor, and, had defendant not made the election, her property would be subject to seizure and plaintiff's action for possession of the property would be an action permitted by law.

**3. Consumer Credit § 1; Unfair Competition § 1 — acceptance of assigned note and security interest in household furnishings — no unfair and deceptive trade practice**

Plaintiff's acceptance of an assigned note and security interest in household goods and furnishings subsequent to the enactment of federal regulations specifically stating that such action was an unfair and deceptive trade practice did not violate N.C.G.S. § 75-1.1, since the assignment was merely a transfer of the original creditor's rights to plaintiff and did not create a new contract between defendant and plaintiff.

**4. Consumer Credit § 1 — creditor in possession of debtor's car — money judgment for creditor proper — no double recovery**

The trial court did not err in granting a money judgment when plaintiff already had possession of defendant's car, since the car was worthless, the trial court had exempted all of defendant's household furnishings, and there was therefore no double recovery.

APPEAL by defendant from *Goodman (Rodney R.), Judge.* Judgment entered 3 September 1987 in District Court, WAYNE County. Heard in the Court of Appeals 5 May 1988.

On 8 February 1985, defendant executed a note and security agreement to Imperial Finance Company of Goldsboro, Inc. (Imperial Finance) in the amount of $644.83. The agreement provided for scheduled payments of $38.00 per month over a period of 24 months. To secure the loan, defendant put up her car and various household goods and furnishings as collateral.

On 16 May 1986, plaintiff, a North Carolina corporation doing business in consumer finance, purchased defendant's note from Imperial Finance. At the time of the acquisition of the note, defendant was three months behind in her payments. Plaintiff's president, Kenneth Davis, testified that on 4 June 1986 defendant came into plaintiff's office to make a $15.00 payment on her account. Davis talked to defendant about the arrearages in her account and although he told defendant that a reduced payment was unacceptable he accepted her check. Davis further testified that plaintiff's employees made several unsuccessful efforts by telephone to collect on defendant's account.

On 22 July 1986, plaintiff filed a complaint for money owed and a complaint to recover possession of personal property. On 7 August 1986, the Clerk of Superior Court in Wayne County entered an Order of Seizure in Claim and Delivery which awarded plaintiff possession of defendant's car and the household goods and furnishings covered by the security agreement. Defendant subsequently made a timely appeal to the district court. On 5 September 1986, the district court modified the clerk's order and exempted from seizure defendant's household goods and furnishings. The court concluded that these items were nonpossessory, nonpurchase money household goods and thus exempt from seizure under G.S. 1C-1601(a)(4) and (e)(7).

On 11 August 1986, defendant filed an answer and counterclaim to plaintiff's complaint for money judgment alleging that defendant was not in default as plaintiff failed to give required notice that it would no longer accept partial payment. Defendant further alleged that plaintiff willfully committed unfair and deceptive trade practices in violation of G.S. 53-180(g) and G.S. 75-1.1.

On 3 September 1987, the district court entered judgment for plaintiff in the amount of $373.00 plus 8% interest from the date of defendant's last payment. Defendant appeals.

*B. Geoffrey Hulse for plaintiff-appellee.*

*North Carolina Legal Services Resource Center, by Margot Roten, for defendant-appellant.*

SMITH, Judge.

Defendant brings forth in the record on appeal 12 assignments of error; however, her brief fails to address several of them. Those assignments of error not argued in defendant's brief are deemed abandoned and will not be addressed. App.R. 28(a). In her remaining assignments of error, defendant contends that the district court erred by not finding that the loan was void due to plaintiff's unfair and deceptive trade practices and that the court erred in granting plaintiff a money judgment when plaintiff had already taken possession of defendant's car. We disagree with both of these contentions.

[1] Defendant's contentions regarding plaintiff's alleged unfair and deceptive trade practices center around plaintiff's non-

possessory, nonpurchase money security interest in defendant's household goods and furnishings. Defendant argues that the taking and attempt to enforce such a security interest violates North Carolina statutes and Federal Trade Commission (FTC) regulations against unfair and deceptive trade practices and that it also violates the common law and equity principles.

G.S. 75-1.1(a) provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." Those engaged in such practices are subject to both civil penalties and private civil actions. G.S. 75-15.2 and G.S. 75-16. Additionally, the North Carolina Consumer Finance Act, G.S. 53-164 *et seq.*, renders void any loan contract in which the licensed lender engages in unfair competition or deceptive trade practices.

There is no precise definition of "unfair" or "deceptive." Determining whether certain acts or practices are deceptive or unfair depends upon the facts of each case and the impact of those acts or practices on the marketplace. *Marshall v. Miller*, 302 N.C. 539, 276 S.E. 2d 397 (1981). Our courts have previously held that "[a] practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscruplous (sic) or substantially injurious to consumers." *Johnson v. Insurance Co.*, 300 N.C. 247, 263, 266 S.E. 2d 610, 621 (1980). Further, a practice is deceptive if it "has the capacity or tendency to deceive. . . . Proof of actual deception is unnecessary." *Id.* at 265, 266 S.E. 2d at 622. Good faith is not a defense to allegations under G.S. 75-1.1. The effect of the actor's conduct on the marketplace is the relevant gauge as to whether unfairness or deception has occurred in a transaction. *Marshall, supra.* In applying the above-mentioned criteria to the facts of this particular case, we hold that plaintiff's actions and practices were neither unfair nor deceptive so as to violate G.S. 75-1.1 and G.S. 53-164 *et seq.*

Defendant points to FTC Credit Practices Rule 16 C.F.R. Section 444.2(4) (1985) which specifically provides that the taking of a nonpossessory, nonpurchase money security interest in household goods is an unfair and deceptive trade practice and to federal decisions which have found that taking that kind of security interest constitutes an unfair and deceptive trade practice. Because

of the similarity in language between G.S. 75-1.1 and Section 5(a)(1) of the FTC Act, 15 U.S.C. Section 45(a)(1), our courts may look to federal court decisions which interpret the FTC Act for guidance in construing G.S. 75-1.1. *Johnson, supra.* However, the above-cited federal regulation was not in effect when the original loan agreement was executed. A subsequent regulation may not be given retroactive effect if it impairs an obligation under a contract or disturbs vested rights. *See Hospital v. Guilford County,* 221 N.C. 308, 20 S.E. 2d 332 (1942). Our analysis, therefore, must be based on the laws and conditions in existence at the time defendant entered into the loan agreement. At that time, G.S. 53-180(f) provided that real property was the only type of property which could not be used to secure a loan under G.S. 53-173 of the North Carolina Consumer Finance Act. Thus, when defendant entered into the security agreement, a lender could presumably secure a loan by taking a security interest in any type of personal property. *Barclays American/Credit Co. v. Riddle,* 57 N.C. App. 662, 292 S.E. 2d 177, *disc. rev. denied,* 306 N.C. 555, 294 S.E. 2d 369 (1982).

[2] Defendant next argues that the security agreement was deceptive in light of G.S. 1C-1601(c) which entitles a debtor to retain free from judgment $2,500.00 worth of household goods and furnishings. Defendant reasons that by entering into and attempting to enforce the agreement plaintiff violated G.S. 75-51(6) which prohibits a creditor from representing to the debtor that nonpayment of a debt will result in seizure of the debtor's property even though such seizure is not, in reality, permitted by law. Thus, defendant argues plaintiff misled defendant by letting her believe that it could seize the property when actually her property was protected under G.S. 1C-1601(c).

The record before us does not reveal whether plaintiff knew at the time it acquired the note what the property was worth. The security agreement does not indicate the values of the secured properties. However, even if the values were listed on the agreement, there still would be no deception because the exemption under G.S. 1C-1601(c) is available at the election of the debtor. G.S. 1C-1603. Had defendant not made the election, her property would be subject to seizure and plaintiff's action for possession of the property would be an action permitted by law. *See* G.S. 25-9-501.

[3] Defendant further asserts that plaintiff's acceptance of the assigned note and security interest on 16 May 1985 violated G.S. 75-1.1. We disagree. In determining one's obligations under a contract, it has been a long-held rule that the law in effect at the time the contract comes into existence is the law which governs the duties of the parties. *Hamilton v. Travelers Indemnity Co.*, 77 N.C. App. 318, 335 S.E. 2d 228 (1985), *disc. rev. denied*, 315 N.C. 587, 341 S.E. 2d 25 (1986). The assignment here is merely a transfer to plaintiff of Imperial Finance's rights under Imperial Finance's contract with defendant. The assignment does not create a new contract between defendant and plaintiff as there was no meeting of the minds between them — an essential element to the formation of a contract. *See* 6 Am. Jur. 2d, *Assignments*, Section 109. At the time defendant signed the note and security agreement, there was no statutory or regulatory prohibition against taking a nonpossessory, nonpurchase money security interest in defendant's household goods and furnishings.

We also note that had the FTC regulation been in effect, violation of its provisions would not, as defendant contends, constitute a *per se* violation of G.S. 75-1.1. The regulation would serve only as guidance in construing this statute. *See Johnson, supra.*

[4] Finally, defendant contends that the court erred in granting a money judgment when plaintiff already had possession of defendant's car because such a judgment allowed plaintiff to enjoy a double recovery. The record shows that prior to the money judgment award, the district court exempted from judgment all of defendant's household furnishings which were put up as security. Additionally, testimony from both plaintiff and defendant at the hearing for a money judgment tended to show that the car which defendant had also put up as security and which plaintiff had already repossessed was worthless. G.S. 25-9-501 provides that when a debtor is in default "a secured party . . . may reduce his claim to judgment, foreclose or otherwise enforce the secured interest by any available judicial procedure. . . . The rights and remedies . . . are cumulative." Plaintiff, because of the court's prior exemption of defendant's household goods and the apparent worthlessness of defendant's car, secured what was owed to it under the promissory note by way of a money judgment. While we do not approve of plaintiff having filed both claims simul-

taneously, we hold that given the particular facts of this case, there was no double recovery and that defendant was not prejudiced by plaintiff's actions. For the foregoing reasons, the judgment of the lower court is

Affirmed.

Judges JOHNSON and PHILLIPS concur.